UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 2:12-CV-357 |
| | ) | |
| $18,198.00 in U.S. CURRENCY, | ) | |
| Defendant, | ) | |
| | ) | |
| JARVIS BENNETT | ) | |
| Claimant. | ) | |

MEMORANDUM OPINION AND ORDER

On August 21, 2012, the United States filed this *in rem* civil action seeking forfeiture of the defendant property pursuant to 21 U.S.C. § 881(a)(6), [Doc. 2]. The defendant property consists of a total of $18,198.00 in United States currency seized from Jarvis A. Bennett on or about March 21, 2012. The complaint alleges that the defendant property is subject to forfeiture as money furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act or, in other words, is proceeds of drug related violations of 21 U.S.C. §§ 841 and/or 846.[1]

On October 24, 2012, Jarvis A. Bennett ("claimant") filed an answer to the complaint, [Doc. 15], and, on November 2, 2012, filed a "Notice Of Claim" in which he claims a right to the property as "proceeds from legitimate retail sales from his store in Elizabethton, Tennessee," [Doc. 20]. On January 10, 2013, the claimant filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for an order returning the defendant property to the claimant, [Doc. 25].

---

[1] Plaintiff's amended complaint also alleges a violation of 21U.S.C. § 813.

1

On January 21, 2013, the United States filed a motion to amend its complaint and the affidavit filed in support of the complaint, [Doc. 27], and attached the amended complaint and amended affidavit to the motion. The Magistrate Judge granted the motion on February 4, 2013, noting that the plaintiff had an absolute right under Rule 15(a) of the Federal Rules of Civil Procedure to file the amended complaint, [Doc. 29]. The Magistrate Judge's order directed that the United States "shall file its amended complaint and affidavit promptly." The United States has not done so; however, because the United States attached the amended complaint and affidavit to its motion and did not require leave of Court to file them, the Court will consider the amended complaint and affidavit to have been filed as of January 31, 2013. The United States filed its response to the motion to dismiss on the same day, [Doc. 28]. The motion to dismiss is now ripe for disposition. For the reasons which follow, the motion will be DENIED.

The claimant has not renewed his motion to dismiss since the filing of the amended complaint. Ordinarily, when a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded. *See Pacific Bell Tel. Co. v. Linkline Communications, Inc.*, 555 U.S. 438, 456 n.4 (2009) (citing 6C Wright & A. Miller*, Federal Practice & Procedure* § 1476, pp. 556-557 (2d ed. 1990)). In certain circumstances, however, a defendant/claimant should not be required to file a new motion to dismiss simply because an amended complaint was filed while the motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the new pleading. 6C Wright, *et al., Federal Practice & Procedure* § 1476, (3d ed. 2010). Here, because the amended complaint was not separately filed after the Magistrate Judge's order and because the motion raises a purely legal issue, the

2

Court will consider the motion as being addressed to the amended complaint. Any other approach would simply elevate form over substance and serve to further delay this proceeding.

The motion to dismiss simply asserts that the substances involved in this case, JWH-250 and AM-2201, were not controlled substances at the times relevant to this complaint but were added to the schedule of controlled substances as Schedule I controlled substances well after the times relevant. As a result, claimant argues that the defendant property could not have been derived from the exchange of controlled substances as alleged in the complaint and should, therefore, be returned to the claimant.

The background, at least for the purposes of the pending motion, is relatively simple and undisputed. The seizure of the defendant property grew out of a Drug Enforcement Administration Task Force investigation of the manufacture and distribution of synthetic drugs, both controlled substances and controlled substance analogues through retail, store front "head shops." The investigation began in January, 2011, as a joint DEA/Elizabethton Police Department investigation into the activities of Billy Bennett and Jarvis Bennett. Billy Bennett was the owner of "Things," a variety store selling tie-dyed t-shirts, posters, incense, candles, beads, cigarette rolling papers, roach clips, bongs, and synthetic cannabinoids. The business was turned over to claimant Jarvis Bennett in September, 2011. The investigation was directed by Task Force Officer C. M. Commons.

On January 18, 2011, an EPD vice officer made an undercover purchase of "Blueberry Spice" at "Things." The clerk from whom the purchase was made indicated to the undercover officer that the business sold a lot of "Blueberry Spice" and that on that particular date there was an approximately 55-gallon fish tank labeled "Blueberry Spice" from which the clerk retrieved the small quantity sold to the officer. The "Blueberry Spice" was sent to the DEA lab for

analysis and was identified as 1-pentyl-3-(2-methoxyphenylacetyl) indole (JWH-250), a synthetic cannabinoid.

On November 17, 2011, an EPD vice unit officer working undercover went to "Things" in an attempt to purchase synthetic cannabis. Jarvis Bennett was behind the counter and recommended "Mr. Nice Guy," a synthetic cannabinoid to the officer. Bennett provided the undercover officer with a free sample. That same day the sample was sent to the DEA lab for analysis. The substance came back positive for 1-(5-Fluoropentyl)-3-(1-naphthoyl) indole (AM-2201).

On February 24, 2012, an EPD patrolman conducted a vehicle stop on a black Nissan Sentra for a traffic violation. After a search of the vehicle, a green leafy substance, believed to be a synthetic cannabinoid, was located. The containers in which the green leafy substance was found were labeled "DANK" and "Black Widow." A plastic ziplock bag labeled "Happy Shaman Herbs" was also located. An occupant of the vehicle told the officer he had just purchased the items from "Things" and the items were sent to the DEA lab for analysis. The substances tested positive for (AM-2201).

On March 19, 2012, DEA Task Force officers conducted another undercover purchase from "Things." The officers bought a glass pipe and a packet of "Mr. Nice Guy." The "Mr. Nice Guy" was packaged in the same manner and had the same appearance as the "Mr. Nice Guy" that was given as a free sample on November 17, 2011 and subsequent analysis showed it was 1-(5-Fluoropentyl)-3-(1-naphthoyl) indole (AM-2201). Additionally, on March 19, 2012, while the Task Force officers were inside the store, the clerk was handing out free samples of synthetic cannabinoids for customers to smoke while in the store.

4

Just as there is no dispute about the relevant facts related to this motion, there does not appear to be a dispute about the legal framework at issue either. The claimant correctly states that on March 1, 2001, the DEA temporarily placed five synthetic cannabinoids into Schedule I. 21 CFR Part 1308, Fed. Reg., March 1, 2011, (Vol. 76, Number 40). JWH-250 and AM-2201 were not among those substances. On October 21, 2011, the DEA temporarily placed another three synthetics into Schedule I. JWH-250 and AM-2201 were not among these additions. Apparently, at no time did DEA place JWH-250 and AM-2201 into Schedule I. Congress, however, amended the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) to include 26 additional synthetic drugs effective July 9, 2012. The President signed the Act into law on July 9, 2012. See Public Law 112-144 of 2012, 112 Congress, Title XI, Subtitle D, § 1151-52. At that time, JWH-250 and AM-2201 were included in Schedule I.

Claimant argues that the substances involved in this case, JWH-250 and AM-2201, were not Schedule I controlled substances at the times relevant to this case but were added as Schedule I controlled substances on July 9, 2012, well after the dates relevant to this case. As a result, claimant concludes that the defendant property is not subject to civil forfeiture and the complaint should be dismissed and the property returned to the claimant.

The United States acknowledges that JWH-250 and AM-2201 were not classified as Schedule I controlled substances until July 9, 2012, but notes that the substances seized from claimant's business on January 11, 2011, November 17, 2011, February 24, 2012 and March 19, 2012, JWH-250 and AM-2201, were analogues of a controlled substance. Not only does the Controlled Substances Act make it unlawful to manufacture, possess and distribute controlled substances, the Act also makes it unlawful to manufacture, possess and distribute analogues of controlled substances. 21 U.S.C. § 813. A controlled substance analogue is a "designer" drug

5

that resembles a controlled substance in molecular structure and actual (or purported) physiological effect. Controlled substance analogues intended for human consumption are treated as Schedule I drugs under the Controlled Substances Act.

Although the substances at issue in this case, JWH-250 and AM-2201, were not classified as Schedule I controlled substances at times relevant to this complaint, they were, as analogues of controlled substances, subject to the prohibition of the Controlled Substances Act, 21 U.S.C. § 813, which makes it unlawful to manufacture, possess and distribute analogues of controlled substances. Claimant's motion to dismiss, therefore, lacks merit, and is DENIED.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE